**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JAMIE L. F.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 25-CV-287-MTS** |
| **v.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Jaime L. F. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On February 3, 2023, Plaintiff protectively filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the Social Security Act. (R. 18, 179-181, 182-83). She alleged an inability to work beginning on October 17, 2021, due to limitations resulting from connective tissue disease, long covid, fibromyalgia, adverse reaction to medication, damage to visual pathway, neuropathy, vertigo, and anxiety. (R. 18, 20-23, 208). Plaintiff was thirty-seven years old at the time of the ALJ's decision. (R. 34-35, 182). She has at least a high school education and past relevant work as a billing specialist. (R. 34, 49, 209).

Plaintiff's application was denied both initially and upon reconsideration. (R. 18, 94-97, 106-08). On July 16, 2024, ALJ Mary Renfroe conducted an administrative hearing via video. (R. 18, 42-67). After the administrative hearing, ALJ Renfroe issued a decision on August 7, 2024,

denying benefits and finding Plaintiff not disabled. (R. 18-35). The Appeals Council denied review on April 25, 2025. (R. 1-6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since October 17, 2021, the alleged onset date. (R. 20). At step two, she found Plaintiff suffered from severe impairments of degenerative disc disease, undifferentiated connective tissue disease, and anxiety. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 24-26). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) "except with occasional climbing ramps and stairs, stooping, kneeling, crouching, crawling, and balancing as that term is defined in the DOT and SCO[,]" and with the following additional limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds and should avoid hazards such as moving mechanical parts and high exposed places. She can understand, remember, and carry out simple instructions; use judgment to make simple work related decision; and can deal with occasional changes in a routine work setting.

(R. 27).

At step four, the ALJ determined Plaintiff had past relevant work as a billing specialist. (R. 34). Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of routing clerk and photocopy machine operator, which she found existed in significant numbers in the national economy. (R. 34-35, 62-66). As a result, the ALJ found Plaintiff had not been under a disability from October 17, 2021, through the date of decision. (R. 35).

**Errors Alleged for Review**

Plaintiff asserts one general error in her challenge to the Commissioner's denial of benefits—that the ALJ's step-five determination is not supported by substantial evidence. (Docket No. 10 at 3-9). This general argument consists of three related subparts. First, Plaintiff argues that the ALJ relied upon unreliable testimony from the VE when determining that a significant number of jobs existed in the national economy that Plaintiff could perform. *Id.* at 4-5. Second, she contends it is unclear whether the total number of jobs the ALJ found she could perform in the national economy represents a significant number of jobs. *Id.* at 5-6. Third, Plaintiff argues the ALJ failed to engage in the required factual analysis under *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), when determining numerical significance. *Id.* at 6-9. Defendant maintains that the ALJ's finding is supported by substantial evidence and it should be affirmed as Plaintiff has presented "no valid reason" to challenge the ALJ's factual finding regarding the total number of jobs existing in significant numbers. (Docket No. 12 at 1, 4-8). For clarity's sake, the Court addresses Plaintiff's allegations of error in the order set forth below.

**The ALJ's Step-Five Determination**

After determining Plaintiff's RFC for light work with additional non-exertional limitations, the ALJ presented the VE with a hypothetical that included all of Plaintiff's functional limitations. (R. 27, 62-64). Utilizing the Dictionary of Occupational Titles ("DOT"), its companion publications, and her own experience as a practicing rehabilitation counselor, the VE testified that an individual with Plaintiff's RFC could not perform her past relevant work but could perform the light-work jobs of (i) routing clerk (DOT § 222.687-022), (ii) photocopy machine operator (DOT § 207.685-014), and (iii) label coder (DOT § 920.587-014). (R. 62-65). She testified there were 41,780 routing clerk jobs, 28,140 photocopy machine operator jobs, and 26,270 label coder jobs

in the national economy. (R. 63). Although the VE indicated her testimony was consistent with the DOT and its companion publications, the ALJ determined there was a potential conflict between the DOT and the label coder position and ultimately excluded it. (R. 35). Based upon the VE's testimony, the ALJ concluded Plaintiff could perform the jobs of routing clerk and photocopy machine operator. (R. 34-35). He found these jobs existed in significant numbers in the national economy. (R. 35).

**A. The Reliability of the VE's Testimony**

Plaintiff argues the ALJ's step-five finding is unsupported by substantial evidence because the ALJ based her decision regarding the number of jobs existing in the national economy on unreliable testimony from the VE. (Docket No. 10 at 5, 9). More specifically, Plaintiff asserts that once the ALJ eliminated the label coder position, one of three jobs the VE identified that Plaintiff could perform in the national economy, the entirety of the VE's testimony was in question. *Id.* at 5. The Commissioner contends that because the VE's testimony was based upon a hypothetical which incorporated all of Plaintiff's functional limitations from the RFC, the VE's testimony that Plaintiff could perform the routing clerk and photocopy machine operator jobs constituted substantial evidence supporting the ALJ's step-five finding. (Docket No. 12 at 4-5).

At step five, the ALJ has a duty to develop the record, which includes "[q]uestioning a [VE] about the source of her opinion and any deviations from [the DOT]." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* Here, Plaintiff does not allege additional conflicts with the VE's testimony as to the routing clerk and photocopy machine operator jobs, nor does she challenge the VE's education and experience, both of which

served as the ALJ's basis for relying on the testimony. (R. 34-35). Instead, Plaintiff disputes whether the ALJ adequately identified the conflict as to the label coder position, why the ALJ found the job inconsistent with the DOT, and the ALJ's reason for eliminating it. (*See* Docket No. 10 at 5).

The ALJ's decision establishes that she identified a conflict with the label coder job based upon its potential inconsistency with the DOT and then resolved the conflict by eliminating the job. (R. 35). However, the VE also identified the jobs of routing clerk, with 41,780 jobs nationally, and photocopy machine operator, with 28,140 jobs nationally. *Id.* Although the ALJ eliminated the label coder job, she concluded that the "remaining jobs [were] sufficiently numerous to preclude the need for additional vocational testimony." *Id.* The ALJ further noted that the VE's testimony was well-founded based upon her professional experience and "otherwise consistent" with the DOT. *Id.* Ultimately, the ALJ relied on the VE's testimony in finding Plaintiff was not disabled and concluding that she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

Moreover, the conflict between the VE's testimony and the label coder position did not require the ALJ to reject the entirety of the VE's testimony. *See, e.g.*, *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021) ("But one mistake in the expert's testimony does not require the ALJ to reject all of it."). Here, the ALJ explicitly stated that the remainder of the VE's testimony concerning the routing clerk and photocopy machine operator jobs was "otherwise consistent" with the DOT. (R. 35). Thus, the ALJ was entitled to rely on the VE's testimony as support that Plaintiff could perform those two jobs in the national economy. Accordingly, the Court finds no error as the VE's remaining testimony served as substantial evidence that the ALJ could rely upon to support the determination of Plaintiff's nondisability.

**B. The Factual Analysis to Determine Significance**

Plaintiff also contends that in reaching her significance determination, the ALJ failed to conduct the appropriate factual analysis under *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). (Docket No. 10 at 7-9). Specifically, Plaintiff argues that the ALJ did not engage in the *Trimiar* analysis, which was "triggered" by the total number of jobs being under 152,000. *Id.* at 5-8. Defendant contends that Plaintiff's argument is "misplaced" as requiring a *Trimiar* analysis for national numbers is "nonsensical[,]" and applied only in cases where "the ALJ identifies only regional job numbers and the number of jobs identified is relatively small[.]" (Docket No. 12 at 5-6). Since the ALJ identified national numbers, Defendant asserts there was no error. *Id.* at 6-8.

Normally, the determination of what constitutes a significant number of jobs is "a fact-specific consideration[] requiring individualized evaluation" that an ALJ decides based upon "'common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), quoting *Trimiar*, 966 F.2d at 1330. In *Trimiar*, the Tenth Circuit Court of Appeals acknowledged that it has "never drawn a bright line establishing the number of jobs necessary to constitute a "significant number." 966 F.2d at 1330. In declining to do so, it adopted several factors from the Eighth Circuit. *Id.*, citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988). These factors, known as the *Trimiar* factors, encompass the "many criteria" an ALJ should consider in determining whether work exists in significant numbers and includes: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work[.]" *Id.* However, the factors are nonexclusive and there is no requirement that the ALJ consider every factor. *See Jansen v. Astrue*, No. 12-cv-00753-LTB, 2013 WL 5338505, at *12 (D. Colo. Sept. 24,

2013) (stating that although the *Trimiar* factors are binding precedent they are "not a mandatory list in which in every case every factor must be mechanically analyzed and applied") (citations omitted).

Without deciding whether the total number of jobs in this case "triggered" a *Trimiar* analysis, the ALJ's discussion of the evidence demonstrates that she sufficiently considered the factors. Notably, the ALJ thoroughly considered Plaintiff's impairments, the combination of her impairments, and the level of disability for her RFC. (R. 27-33). She also discussed the reliability of the VE's testimony both at the hearing and in her decision. (R. 35, 64-65). For example, during the hearing the ALJ asked the VE several hypotheticals and questioned her conclusions on the identified jobs, the type and nature of those jobs, and their availability in the national economy. (R. 35, 62-65). The ALJ also explicitly asked Plaintiff about her difficulties with driving and considered that testimony in her decision. (*See* R. 27, 51 (stating Plaintiff had difficulty driving)). She further stated her reliance on the VE's testimony and identified what part of the testimony was rejected. (R. 35). Though the *Trimiar* factors are considerations and do not represent an exhaustive list, the aforementioned evidence sufficiently demonstrates that the ALJ considered the factors.[1] *See Jansen*, 2013 WL 5338505, at *12. Accordingly, the Court finds that the ALJ's determination is supported by substantial evidence because she did consider or at least "thought about, took into account, [or] otherwise adhered to [the] requirement to "consider" the [*Trimiar*] factors" in concluding that the routing clerk and photocopy machine operator jobs exist in significant numbers in the national economy. *Id.*

[1] This case is different from *Herrera v. Kijakazi*, No. CV 20-0313 KG/JHR, 2021 WL 4653725 (D.N.M. Oct. 7, 2021), cited by Plaintiff, wherein the ALJ's lack of consideration of any of the factors rendered the decision unsupported by substantial evidence. *See id.* at *1, 3 (finding that the ALJ "referenced none of the *Trimiar* factors" rendering her decision unsupported by substantial evidence).

**C. The ALJ's Finding that 69,920 Jobs Constitutes a Significant Number**

Plaintiff further asserts that it is "not clear that a total of 69,920 jobs [the number of routing clerk and photocopy machine operator jobs] in the national economy is significant." (Docket No. 10 at 5). In support of her argument, Plaintiff relies on several district court cases wherein they declined to find that jobs with numbers well-over 69,920 nationally constituted a significant number. *Id.* at 5-6. However, as pointed out by Defendant, the cases cited by Plaintiff involve circumstances wherein courts "were asked to determine whether a certain number of remaining jobs, after one or more jobs were eliminated, was significant as a matter of law under a harmless error framework." (Docket No. 12 at 5). This Court agrees with Defendant that the numerical significance issue in this case is distinct from the cases cited by Plaintiff involving harmless error.

In *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004), the Tenth Circuit discussed application of a harmless error analysis to numerical significance, noting that a court is seldom allowed to supply a dispositive finding under harmless error, but recognizing that such a finding may be appropriate in the "exceptional circumstance, i.e., where, based on material the ALJ did at least consider . . . , [a court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[2] *Id.* at 1145. However, as part of its discussion, the *Allen* court distinguished the circumstances before it, deciding whether a particular number of jobs is significant in "the first instance," from a court's review of an ALJ's finding that a number of jobs is significant. *See id.* at 1144 ("Overriding the bare numbers is the procedural fact that these cases involved court review of a *finding* of numerical significance *made by the ALJ*; they were not deciding in the first instance that a particular number

---

[2] The *Allen* Court ultimately determined that supplying the dispositive finding under harmless error was inappropriate based upon the small number of remaining jobs. *Id.*

was significant under the circumstances."); *see also Garcia v. Comm'r, SSA*, 817 F. App'x 640, 650 (10th Cir. 2020) (citing *Allen* for the same proposition). Here, the cases relied upon by Plaintiff involve a significance determination in "the first instance," (Docket No. 10 at 5-6), while the ALJ in this case has already made a finding that a total of 69,920 routing clerk and photocopy machine operator jobs constitute a significant number of jobs in the national economy. (R. 35); *see also David Lee J. v. Berryhill*, No. 17-CV-219-CVE-FHM, 2018 WL 4945235, at *4 (N.D. Okla. Aug. 7, 2018) (acknowledging that courts "frequently remand cases for further consideration when the number of jobs is reduced on appeal [because] it is the province of the Commissioner, not the courts, to determine what number constitutes a significant number of jobs[,]" but noting that was not the case presented, and affirming the ALJ's finding that the number of identified jobs constituted a significant number).

Moreover, the circumstances in this case are more akin to those addressed by the Tenth Circuit in *Lynn v. Colvin*, 637 F. App'x 495 (10th Cir. 2016), wherein the Tenth Circuit declined to reverse the ALJ's finding that 700 regional jobs and 24,900 national jobs were available in significant numbers. *Id.* at 499. Although the appellant's argument centered on the low number of regional jobs, the court determined that "the number of available jobs can be significant even if few of the jobs are in the plaintiff's region[,]" as "[t]he relevant test is *either* jobs in the regional economy *or* jobs in the national economy." *Id.* (quotation omitted). Certain district courts, including one in this district, have distinguished *Lynn* from those cases where a court made a dispositive finding. *See Justin M. D. v. Kijakazi*, No. 21-cv-00347-SH, 2022 WL 4096878, at *5 (N.D. Okla. Sept. 7, 2022) (distinguishing *Lynn* from a case which required the court to make a dispositive finding and noting that "*Lynn* was not a case where the district court was deciding for the first instance whether a job existed in significant numbers under a harmless error analysis, but

rather involved upholding an ALJ's affirmative finding that 24,900 jobs in the national economy was a significant number."), citing *Lynn*, 637 F. App'x at 499; *see also Patrick J. M. v. Comm'r of Soc. Sec. Admin.*, No. 21-cv-02008-TC, 2023 WL 2838445, at *4 (D. Kan. Apr. 7, 2023) (discussing the Tenth Circuit's decision in *Lynn* "that 700 regional jobs and 24,900 national jobs constituted a significant number" and its refusal "to reverse the ALJ's previous determination that, under the circumstances, one or both of those numbers was significant[,]" while equating *Lynn* to one of the cases discussed in *Allen* that was not subject to harmless error analysis because it "involved court review of a finding of numerical significance made by the ALJ[.]").

Based upon the distinction made in *Allen* and the Tenth Circuit's decision in *Lynn*, this Court finds no error with the ALJ's conclusion that 69,920 routing clerk and photocopy machine operator jobs constitute a significant number of jobs in the national economy. Thus, to the extent Plaintiff is challenging numerical significance based solely on the number of jobs, her contention is without merit.

**Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**IT IS SO ORDERED** this 15th day of September, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT